UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VONNA "RAY" BAXTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-3676 |
| | § | |
| CHARLES MCCLELLAND & JOHNNY OLGUIN, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before the court is defendants Charles McClelland and Johnny Olguin's motion for summary judgment. Dkt. 21. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. Factual Background**

Plaintiff Vonna "Ray" Baxter assisted defendant Johnny Olguin, a coach at Texas Southern University ("TSU"), with the strength and conditioning program for athletes at TSU from April 28, 2008 until late October or early November of 2009. Dkts. 12, 23. Baxter did not get paid for this assistance from April through September of 2008. Dkts. 21, 23. Baxter was officially hired to assist Olguin in September 2008 and continued in that position until his separation from TSU in October or November of 2009. Dkts. 21, 23.

*A.    April through September 2008*

According to Baxter, he approached Olguin in April 2008 and asked if Olguin was interested in starting a power lifting team at TSU. Dkt. 23. Olguin told Baxter that he was not interested in starting a power lifting team but that he may be interested in hiring Baxter to assist him with the

strength and conditioning program. *Id.* Baxter claims that, a week later, Olguin told him that he had obtained approval for Baxter to start as his assistant. *Id.* According to Olguin, when he spoke with Baxter about being his assistant in April 2008, he advised Baxter that (1) there was not enough funding in the athletic department's then-current budget to pay Baxter for his work through the summer of 2008; (2) Baxter could volunteer with the possibility of becoming an employee in September 2008; and (3) Olguin would approach defendant Charles McClelland, the TSU athletic director, in September to ask if Baxter could be paid for the summer months retroactively. Dkt. 21. Baxter agrees that Olguin informed him about the budgetary concerns. Dkt. 23. Baxter's understanding about his status and the possibility of being paid for the summer in September, however, is unclear because Baxter has presented the court with conflicting information. In Baxter's declaration, which was filed in support of his opposition to the summary judgment motion, Baxter states that he was "hired" in April of 2008 and that, when he was hired, "Olguin told [him] that [he] *would be paid* in September when the new budget was implemented." Dkt. 23, Exh. 2 (emphasis added). During Baxter's deposition, Baxter claimed, consistent with his declaration, that he had understood that he "would be paid in September of 2008 retroactively," but he noted that those "may not have been [Olguin's] exact words." Dkt. 21, Exh. 2 at 25:9-17. Then, later in the deposition, Baxter stated:

> I know Mr. Olguin does not have the final say on the budget. All he did was make recommendation, so I'm not trying to hold his feet to the fire. I mean, he made recommendations. Now, whether that happened or not was up to the athletic director.

*Id.* at 27:3-7. When pressed to clarify, Baxter said, "Again, [Olguin] said that he would [get the money to Baxter in September], but I understood that he don't have the final say. I understood that." *Id.* at 27:19-28:1.

2

According to defendants, McClelland determined in August 2008 that the TSU athletic department did not have sufficient funding to pay Baxter retroactively for assisting Olguin during the summer months, and Olguin informed Baxter of this decision. Dkt. 21.

## B.     *September 2008 through October or November 2009*

When Olguin delivered the news that Baxter would not be paid retroactively for his work during the summer months, Olguin also informed Baxter that there was sufficient funding to hire Baxter as an assistant beginning in September 2008. Dkts. 21, 23. Baxter attended a new-hire orientation and completed the necessary new-hire paperwork. Dkt. 23. Baxter indicated on the paperwork that he was being hired for a part-time position. *Id.* He claims that McClelland's assistant told him to mark part-time because there was a hiring freeze on full-time positions. *Id.*

Despite his official part-time status, Baxter claims that he worked an average of 52 hours each week, except during school breaks and the Christmas holidays, until his separation of employment in October of 2009. *Id.* Baxter states that he arrived at work during the "early morning hours" during football season,[1] that he worked together with Olguin in the weight room most of the time, and that Olguin would observe Baxter leaving around 5:30 or 6:30 every evening. *Id.* Thus, Baxter claims that Olguin knew he was working more than 40 hours per week. *Id.* Olguin claims that he is unaware of any weeks in which Baxter worked more than 40 hours. Dkt. 21, Exh. 1. However, McClellan and Olguin state that even if Baxter did arrive and depart at the times he lists, Olguin had no way of knowing whether Baxter was working or merely working out for his own

---

[1] Baxter does not provide information about his schedule outside of football season, other than that he worked an average of 52 hours per week.

benefit.[2]  Dkt. 25.  Moreover, they argue that Baxter was required to obtain permission to work overtime and did not do so.  Dkt. 21.

## II.  Legal Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material

---

[2] McClellan and Olguin point out that if Olguin indeed noticed that Baxter was at the gym from 5:30 am to 6:30 pm every work day, that would constitute 65 hours per week, not 52.  Dkt. 25 at 4.  Therefore, McClellan and Olguin argue that there is time during these hours that Baxter was allegedly at the gym that he was not working and that, even if Olguin were required to actively monitor Baxter's hours, he should not have to distinguish between when Baxter was actually working and when he was working out at the gym for his own benefit.  *Id.*  McClellan and Olguin, however, do not take into account that Baxter stated he worked an *average* of 52-hours per week, which likely takes into account the weeks outside of football season in which Baxter presumably worked fewer hours.

fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl.. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory

"bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. Legal Analysis

McClellan and Olguin claim they are entitled to summary judgment because (1) they are not "employers," as that term is defined in the Fair Labor Standards Act ("FLSA"); (2) even if they were employers, they are entitled to qualified immunity as government officials; (3) Baxter was a volunteer from April through August 2008 and therefore not covered as an "employee" under the FLSA; and (4) Baxter failed to notify his employer that he allegedly worked overtime as required by the FLSA. Dkt. 21. After considering the parties' arguments with regard to the first contention, the court finds that Baxter has not presented an issue of material fact regarding defendants' claim that they are not employers under the FLSA, so the court does not address the other arguments.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the Fifth Circuit, courts consider this relationship in light of "economic realities." *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) ("This circuit . . . has underscored the importance of 'the economic realities' of employment . . . ." (citations omitted)). A corporate officer "'with operational control of a corporation's enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Grim Hotel Co.*, 747 F.2d at 971-72 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). The definition of employer is broad enough to encompass an individual, who although lacking a possessory stake in the corporation, "effectively dominate[s] [the corporation's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-á-vis its employees." *Reich*

*v. Circle C Inv., Inc.*, 998 F2d 324, 329 (5th Cir. 1993); *see also Grim Hotel*, 747 F.2d at 972 (examining the definition in the context of one who "independently exercised control over the work situation"). In addition to analyzing corporation administration in determining FLSA employer liability, courts also look to whether an individual undertakes "managerial responsibilities" relating to the corporation or exerts "substantial control" over its operation. *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427 (1973); *see Reich*, 998 F.2d at 329 (noting that defendant was the "driving force" behind the corporation and thus met the definition of an employer). Common examples of "managerial responsibilities" include holding the "purse-strings" of a corporation, selecting management of the corporation, visiting locations to solve major operational problems, maintaining offices onsite, and being responsible for employee compensation, wage increases, and benefits. *See Grim Hotel*, 747 F.2d at 972 (controlling finances, hiring, visiting locations); *Reich*, 998 F.2d at 329 (hiring, record-keeping, supervising employees, drafting corporate memoranda); *Agnew*, 712 F.2d at 1511 (maintaining onsite offices, wholly owning corporation, overseeing employee compensation and benefits).

Both McClellan and Olguin claim that they cannot be considered employers under the FLSA. Each defendant claims that he cannot be considered Baxter's employer because he (1) did not have the power to hire and fire Baxter;(2) did not determine the rate[3] and method of payment; and (3) did not maintain Baxter's employment records. Dkt. 21. Rather, either TSU's Human Resources Department or CORESTAFF, a temporary agency through which Baxter worked for a time,

---

[3] McClellan notes that he did determine the maximum amount that Baxter could be paid because it was his responsibility to ensure that the athletic department did not go over budget. But, he claims he had no involvement in the determination of the actual rate or method of payment. Dkt. 21.

performed all of these tasks. *Id.* McClellan additionally claims that he had no involvement in Baxter's supervision. *Id.*

Baxter argues that the definition of employer under the FLSA is sufficiently broad to encompass both McClellan and Olguin. Dkt. 23. Citing *Grim Hotel*, Baxter states that an individual qualifies as an employer when he or she "exercises control over the work situation." *Id.* (citing *Grim Hotel*, 747 F.2d 966, 972 (5th Cir. 1984)). Baxter fails, however, to delve deeper into what the Fifth Circuit meant in Grim Hotel by the phrase "control over the work situation." In *Grim Hotel*, the Fifth Circuit affirmed the district court's finding that a hotel president who had "control over the work situation" of the plaintiffs was personally liable as an employer under the FLSA, along with the five hotels. *Grim Hotel*, 747 F.2d at 968, 972, 975. The individual, Charles Alberding, began and controlled the defendant hotel corporations, "held their purse strings," "personally selected the manager of every hotel," and "traveled to Texas to inspect the hotels, and to solve major problems." *Grim Hotel*, 747 F.2d at 972. The Fifth Circuit described Alberding as the "top man," noting that the hotels "were Alberding's and functioned for the profit of his family." *Id.* The amount of control exercised by Alberding is significantly greater than that exercised by either defendant in the instant case.

Baxter argues that Olguin and McClellan had sufficient involvement in the terms and conditions of Baxter's employment to be considered employers under the FLSA. Specifically, Baxter claims that Olguin hired Baxter, after receiving permission from McClellan, and that Olguin determined what hours Baxter worked and directed his day-to-day activities. Dkt. 23. Thus, Olguin and McClellan *together* "hired Baxter, determined his work schedule, assigned Baxter's job duties and set his rate of pay." *Id.* First, these activities, taken together, do not rise to "substantial control"

over TSU's operations. Second, even if they did, it is inappropriate to analyze the areas in which McClellan had control and the areas in which Olguin had control in order to find them both, individually, liable under the statute as employers. The question is not whether the individual defendants, together, exert sufficient control to be considered an employer, it is whether each defendant, standing alone, has sufficient control to be held liable as an employer for alleged violations of the FLSA. *See Grim Hotel*, 747 F.2d at 972 (analyzing whether Alberding "*independently* exercised control over the work situation" (emphasis added) (quotations omitted)). If courts were to look at the control exerted by a group of defendants collectively, then plaintiffs would be able to string together a line of defendants in any company that, together, exercise enough control to be considered employers under the FLSA. Individuals such as payroll processors and records clerks could be held personally liable as employers under the FLSA. Obviously, neither Congress nor the courts interpreting the FLSA intended for the term "employer" to encompass such individuals. The court, therefore, considers Olguin's level of control and McClellan's level of control separately.

Olguin managed Baxter's day-to-day activities, but Baxter does not dispute that Olguin had to get permission to hire Baxter and had no control over pay or record-keeping. McClellan allegedly gave permission to hire Baxter and set the pay bar for Baxter's pay in accordance with the athletic department budget, but Baxter does not dispute that McClellan had no control over Baxter's day-to-day duties or record-keeping. Both McClellan and Olguin claim that they did not have the authority to terminate Baxter's employment, and Baxter does not present any evidence to the contrary. These activities do not rise to "substantial control" over the terms and conditions of Baxter's employment. Thus, neither McClellan nor Olguin is an employer under the FLSA.

### IV.  Conclusion

Because neither McClellan nor Olguin is an employer under the FLSA, they cannot be held individually liable under the FLSA.  Accordingly, Olguin and McClellan's motion for summary judgment is GRANTED and all of Baxter's claims against them are DISMISSED WITH PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on November 5, 2010.

_____
Gray H. Miller
United States District Judge